**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

WILMY CALIXTE

Petitioner,

v.

MATTHEW PUTRA, *in his official capacity as Acting Field Office Director of Enforcement and Removal Operations, Detroit Field Office, Immigration and Customs Enforcement*, et al.

Respondents.

Case No. 1:26-CV-1015

Judge Michael R. Barrett

**ORDER**

This matter is before the Court on Wilmy Calixte's petition for a writ of habeas corpus under 28 U.S.C. § 2241. (Doc. 1). Respondents have filed a return and response in opposition. (Doc. 4).

## I. BACKGROUND

Petitioner's circumstances are not unlike those of many noncitizens who have petitioned the Court over the course of the last year. Here, Petitioner applied for and received advance travel authorization to the United States under a humanitarian parole program. He was inspected at a designated port of entry in July 2023 and received a grant of humanitarian parole, after which he entered the country and obtained employment authorization. (Doc. 1, PageID 1-2). That parole expired on July 12, 2025, but Petitioner continued to reside in the country.

In September 2026, approximately fourteen months after his parole expired, Petitioner was arrested by Immigration and Customs Enforcement ("ICE") and booked into the Butler County Jail. Although Petitioner requested a custody redetermination hearing before an Immigration Judge, the IJ denied bond on the grounds of "[n]o jurisdiction."[1] (Doc. 1-7, PageID 34). Petitioner contends that his continued detention without an individualized bond hearing violates 8 U.S.C. § 1226(a) and the Fifth Amendment. Respondents maintain that detention is mandatory under § 1225(b)(2)(A) because Petitioner "arrived in the United States seeking admission, applied for admission, and remains an arriving alien." (Doc. 4, PageID 48).

## II. <u>ANALYSIS</u>

### A. Statutory Framework

The statutory question at hand, which the Court has previously surveyed in detail, is the detention framework governing Petitioner's present custody. Section 1225(b)(2)(A) requires detention of noncitizens within its scope pending removal proceedings. Section 1226(a), by contrast, establishes the default framework for arrest and detention of noncitizens already present in the country pending a decision on removal (notwithstanding the mandatory-detention categories specified in § 1226(c)).

*Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026), supplies the governing distinction and clearest directive. Section 1225(a)(1) broadly classifies a

[1] The case-specific written portion of the IJ's order contained only those two words.

noncitizen present without admission as an "applicant for admission." Section 1225(b)(2)(A), however, requires that the applicant also be "seeking admission." Those phrases perform different work—the first establishes a statutory classification, whereas the second requires affirmative, present conduct directed toward obtaining entry through inspection and authorization by an immigration officer. *Lopez-Campos*, 175 F.4th at 722-23. Treating every applicant for admission as necessarily seeking admission, as Respondents ask the Court to do, would collapse the distinction and deprive the latter requirement of independent meaning, thereby running afoul of the Sixth Circuit's holding. *Id.* at 723.

To be clear, Petitioner's parole did not necessarily constitute "admission" for the purposes of this inquiry, nor did the expiration of that parole, in itself, make Petitioner an applicant for admission. *See* 8 U.S.C. §§ 1101(a)(13)(B), 1225(a)(1), 1182(d)(5)(A). Nor does the Court overlook the regulation expressly preserving an "arriving alien's" classification after parole is terminated or revoked. 8 C.F.R. § 1001.1(q). But merely retaining or returning to an immigration status does not itself establish the present conduct required by § 1225(b)(2)(A). Petitioner's initial inspection occurred when he sought admission to the United States in July 2023. It does not follow that he would be seeking admission again at the time was arrested by ICE in Columbus, Ohio, more than three years later.

Section 1182(d)(5)(A) directs that, when the purposes of parole have been served, the noncitizen is returned to the custody from which he was paroled and thereafter treated in the same manner as any other applicant for admission.

Similarly, the implementing regulations provide that, when parole expires, it is automatically terminated and the parolee is restored to the status he held at the time he was first granted parole. 8 C.F.R. § 212.5(e)(1), (2)(i). These provisions establish the consequences of ending parole. They do not require that every subsequent detention proceed under § 1225(b)(2)(A), regardless of the person's circumstances when arrested.[2] And the instruction to treat a former parolee like any other applicant for admission must be read together with the distinction that *Lopez-Campos* requires. *See Drozdov v. Lyons*, No. CIV-26-365-SLP, 2026 U.S. Dist. LEXIS 115420, at *5-6 (W.D. Okla. May 26, 2026) (collecting cases).

The Court's conclusion is reinforced by the Supreme Court's treatment of this same language. In *Clark v. Martinez*, the government invoked § 1182(d)(5)(A) to justify continued detention of a noncitizen after parole had been revoked. But the Court found "nothing in [the statutory] text that affirmatively authorizes detention" and looked instead to the statute otherwise governing the petitioner's custody. 543 U.S. 371, 385-86 (2005). Because *Clark* concerned post-removal-order detention under § 1231(a)(6), it does not decide which pre-removal detention provision applies here. Nevertheless, its analysis demonstrates why the return-to-custody language cannot substitute for identifying and applying the governing detention statute in the case at bar. *See Cabrera Martinez v. Marich*, 816 F. Supp. 3d 356, 366-68 (W.D.N.Y. 2025) (applying *Clark*'s reasoning to detention after a noncitizen's parole expired).

---

[2] Moreover, because the record does not reflect that Petitioner was *ever* previously detained under § 1225(b)(2)(A), it makes even less sense that he would be subject to that section upon the expiration of his humanitarian parole.

Here, Petitioner was inspected and paroled into the country more than three years prior to the arrest that led to his current detention. He then remained in the United States for approximately fourteen months after his parole expired. When arrested, he was not presenting himself for entry or undergoing an admission inspection. Although *Lopez-Campos* involved noncitizens who entered without inspection, that factual difference does not answer the statutory question at issue. The relevant inquiry concerns whether Petitioner was seeking admission when detained, not merely whether he sought admission at some earlier point in his life. The Court has already applied that reasoning under materially similar circumstances and concluded that § 1226(a) governed the detention of a previously paroled noncitizen arrested in the interior.[3] *Munoz Soto v. Raycraft*, 834 F.Supp.3d 767, 771 (S.D. Ohio 2026).

The undersigned acknowledges the contrary expired-parole rationale employed by other district judges in cases such as *Salazar Ortiz v. Mullin*, No. 2:26-CV-180, 2026 U.S. Dist. LEXIS 204188, at *9-18 (E.D. Ky. Sept. 10, 2026), but declines to adopt it. That decision and the others cited by Respondents treated the expiration of a petitioner's parole as restoring the petitioner's earlier detention framework alongside his immigration classification. The Court instead reads the

---

[3] To the extent that Respondents contend the Court "failed to recognize" their argument in *Munoz Soto*, (Doc. 4, PageID 57), their assertion is undermined by a common-sense reading of the opinion. The Court noted Respondents' position that the expiration of Petitioner's parole restored him to the status of an arriving alien seeking admission and therefore called for mandatory detention under § 1225(b)(2)(A). 834 F.Supp.3d at 771. The Court expressly applied *Lopez-Campos*, cited authority addressing the effect of § 1182(d)(5)(A), and concluded that Petitioner's detention was governed by § 1226(a). The Court did not overlook Respondents' argument; it rejected the asserted legal consequence of parole expiration.

return-to-custody language together with the direction to treat a former parolee like any other applicant for admission. And under *Lopez-Campos*, that treatment requires an independent determination that § 1225(b)(2)(A)'s conditions are satisfied. The continuing classification alone does not supply that determination. Accordingly, the expiration of Petitioner's parole did not and does not, by operation of law, subject him to mandatory detention under § 1225(b)(2)(A) following a subsequent arrest in the interior. His present detention is governed by § 1226(a).

## B. Constitutional Framework

The Court's statutory conclusion also lays the framework for analyzing Petitioner's constitutional claim. Simply put, the entry fiction invoked by Respondents does not serve to eliminate Petitioner's protections under the Fifth Amendment. The Sixth Circuit has said as much, recognizing the historic role of the entry fiction, but holding clearly that it does not apply "to deprive aliens living in the United States of their status as 'persons' for the purposes of constitutional due process." *Rosales-Garcia v. Holland*, 332 F.3d 386, 409 (6th Cir. 2003) (en banc).

Because "[i]t defies logic to deem someone simultaneously awaiting entry 'at the border' and 'present' inside the country," *Cabrera Martinez v. Marich*, 816 F.Supp.3d 356, 367 (W.D.N.Y. 2025), it follows that "the entry fiction must end when a person continues living in the country after parole expires," *Babiuk v. Warden*, No. 26-cv-1559-NYW, 2026 U.S. Dist. LEXIS 186658, at *8 (D. Col. Aug. 19, 2026); *see also Campell v. Almodovar*, No. 1:25-cv-9509, 2025 U.S. Dist. LEXIS 256202, at *22 (S.D.N.Y. Dec. 10, 2025) (explaining that "the central concern of historic applications

of the [entry fiction] was the admission or removal of a noncitizen, rather than detention pending an adjudication.”).

Just as it did in *Lopez-Campos*, “the government stretches the Supreme Court’s holdings in *Thuraissigiam* and *Demore* beyond their logical breaking points.” 175 F.4th at 732. True, dicta in *Dep’t of Homeland Security v. Thuraissigiam* opined that the entry fiction may encompass noncitizens paroled in the country for years. 591 U.S. 103, 139 (2020). But that case concerned a noncitizen facing expedited removal after he was arrested a mere twenty-five yards from where he crossed the border, and its holding was “clearly limited to noncitizens at the border.” *Lopez-Campos*, 175 F.4th at 733. Likewise, *Demore v. Kim* is inapposite because it upheld mandatory detention under § 1226(c) for inadmissible noncitizens convicted of certain enumerated crimes. 538 U.S. 510, 531 (2003). It “did not address the process due to noncitizens subject to § 1226(a)’s permissive detention scheme,” *Lopez-Campos*, 175 F.4th at 734, and neither case resolves this petition in Respondents’ favor.

The question here remains what process is due. Because the expiration of Petitioner’s parole returned his status to that of an applicant for admission unlawfully present in the country, *see Cabrera Martinez*, 816 F.Supp.3d at 367-68, he cannot be treated as presently seeking admission and his current detention falls under § 1226(a), *see Lopez-Campos*, 175 F.4th at 732. And as the Court has repeatedly found, “Petitioner’s detention under the circumstances stands in direct violation of his due process rights.” *Munoz Soto*, 834 F.Supp.3d at 772; *see Azalyar v. Raycraft*, 814 F.Supp.3d 926 (S.D. Ohio 2026).

## III. CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **GRANTED**.[4] Accordingly, **IT IS ORDERED** that, on or before October 22, 2026, at 5:00 p.m. EDT, Respondents **shall** either release Petitioner from custody *or* provide Petitioner with a constitutionally adequate bond hearing before an IJ. In the event of the latter:

**(1)** Respondents **shall** provide a copy of this order to the IJ prior to any hearing;

**(2)** the IJ **shall** have jurisdiction over the matter and be empowered to grant release. *See Lopez-Campos*, 175 F.4th at 734-35;

**(3)** Respondents **shall** *bear the burden of persuasion* of justifying Petitioner's continued detention by adducing *clear and convincing evidence* on the record that Petitioner is either a flight risk or a danger to the community;

**(4)** the IJ **shall** consider the evidence submitted by Petitioner, carefully weigh the nine relevant factors from *Matter of Guerra*, 24 I.&N. Dec. 37, 50 (B.I.A. 2006), and clearly explain all legal and factual conclusions; and

**(5)** the IJ **shall** meaningfully consider, *and explain*, the suitability of less restrictive alternatives to detention (such as release on recognizance), or if setting a monetary bond, Petitioner's "ability to pay when setting any bond amount." *M.P.L. v. Arteta*, No. 25-CV-5307, 2025 U.S. Dist. LEXIS 204541, at *20 (S.D.N.Y. Oct. 16, 2025).

**IT IS FURTHER ORDERED** that Respondents **shall** file a status report on or before October 26, 2026, to certify compliance with the Court's ruling. The

[4] As a result, the motion to dismiss filed by Respondent Butler County Sheriff is DENIED as moot.

certification shall note whether and when a bond hearing was held, whether bond was granted or denied, and the reasons therefore.

**IT IS SO ORDERED.**

*/s/ Michael R. Barrett*
Michael R. Barrett
United States District Judge